Slip Op. 07 – 47

## UNITED STATES COURT OF INTERNATIONAL TRADE

VOLKSWAGEN OF AMERICA, INC.,

                Plaintiff,

                v.

UNITED STATES,

                Defendant.

Before: Richard W. Goldberg,
        Senior Judge

Court No.  96-01-00132

**PUBLIC VERSION**

## OPINION

[Judgment for Defendant.]

Dated: March 28, 2007

Law Offices of Thomas J. Kovarcik (Thomas J. Kovarcik), for
Plaintiff Volkswagen of America, Inc.

Peter D. Keisler, Assistant Attorney General; Barbara S.
Williams, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice; Yelena Slepak, Office of Assistant Chief Counsel,
International Trade Litigation, U.S. Customs and Border
Protection, Of Counsel, for Defendant United States.

**GOLDBERG, Senior Judge**:  In this case, Plaintiff Volkswagen of

America, Inc., ("Volkswagen") seeks an allowance against import

duties for the value of imported automobiles that were allegedly

defective at the time of importation.  The United States Customs

Service[1] ("Customs") liquidated the entries without an allowance

---

[1] The United States Customs Service has since become the Bureau
of Customs and Border Protection per the Homeland Security Act
of 2002, § 1502, Pub. L. No. 107-296, 116 Stat. 2135, 2308-09
(Nov. 25, 2002), and the Reorganization Plan Modification for

in the appraised value of the merchandise.  Customs denied

Volkswagen's protests, and Volkswagen commenced an action to

challenge the protest denials in this Court.  Both Customs and

Volkswagen filed motions for summary judgment.  The Court held

that it lacked jurisdiction over vehicles that were repaired

after the date of protest because Volkswagen "could not have had

in mind defects to automobiles that had not been repaired before

the protests were filed."  Volkswagen of Am., Inc. v. United

States, 27 CIT 1201, 1206, 277 F. Supp. 2d 1364, 1369 (2003)

("Volkswagen I").  As for the remaining claims, the Court denied

both motions because factual issues remained as to whether the

defects existed at the time of importation and the amount of

allowances tied to those defects.  See id. at 1208, 277 F. Supp.

2d at 1371.  The Court specifically noted that "[w]hat remains

for trial is development of the factual record to 'independently

confirm the validity' of the repair records, to establish that

the defects did indeed exist at the time of importation."  Id.

(quoting Samsung Elecs. Am., Inc. v. United States, 23 CIT 2, 8,

35 F. Supp. 2d 942, 947 (1999), aff'd 195 F.3d 1367 (Fed. Cir.

1999).

     After the Court's decision in Volkswagen I, this action was

stayed pending the resolution of Saab Cars USA, Inc. v. United

the Department of Homeland Security, H.R. Doc. 108-32, p. 4
(Feb. 4, 2003).

States, 434 F.3d 1359 (Fed. Cir. 2006) ("Saab III").  The

circumstances in Saab III are very similar to those presented in

this action.  The Federal Circuit held that Saab failed to prove

by a preponderance of the evidence that its merchandise was

defective at the time of importation. See id. at 1375.  After

Saab III was decided, the Court ordered Volkswagen to attempt to

demonstrate how that case was distinguishable from the

circumstances of Volkswagen's case.[2]  Volkswagen has complied

with this order, and has made clear that with the additional

trial evidence it has submitted, its supporting brief

constitutes its summation at trial.  Pl.'s Br. 4.  Accordingly,

---

[2] The order stated the following in relevant part:

> [I]t is hereby ORDERED that Plaintiff Volkswagen of
> America, Inc. ("Plaintiff"), shall . . . file a brief
> addressing why it believes the evidence in this case,
> and in particular the evidence produced after this
> Court's denial of Plaintiff's summary judgment motion
> August 13, 2003, establishes that the alleged defects
> existed at the time of importation; and it is further
> ORDERED that such brief endeavor to distinguish the
> circumstances of this case from the circumstances in
> Saab Cars USA, Inc. v. United States, 434 F.3d 1359
> (Fed. Cir. 2006), where the U.S. Court of Appeals for
> the Federal Circuit held that that plaintiff's
> reliance on probabilistic warranty tracking evidence,
> though "generally reliable," was not sufficient to
> sustain a plaintiff's burden of proving by a
> preponderance of the evidence that the particular
> defects in that case as to which allowances were
> claimed under 19 C.F.R. § 158.12 existed at the time
> of importation . . . .

Sched. Order 1, May 8, 2006.

the decision rendered in this action will be submitted as a

final judgment.

## I.    JURISDICTION

In its evidence submitted for trial, Volkswagen includes

repairs completed _after_ the vehicles' respective protest dates.

Volkswagen claims that the Court has jurisdiction over these

repairs, because as long as at least one repair was done prior

to protest, the Court has jurisdiction over the "vehicle."

Consequently, the Court would have jurisdiction over every

subsequent repair performed on that vehicle, even if the repair

was done after the date of protest.  Customs disagrees, and

argues that all claims relating to repairs that occurred after

the date of protest should be dismissed for lack of

jurisdiction.

The Court has exclusive jurisdiction over "any civil action

commenced to contest the denial of a protest, in whole or in

part, under [19 U.S.C. § 1515]."  28 U.S.C. § 1581(a) (2000).

The Court does not have jurisdiction over the action pursuant to

§ 1581(a) if the plaintiff has not filed a valid protest.  See

Computime, Inc. v. United States, 772 F.2d 874, 875 (Fed. Cir.

1985).  If certain vehicle repairs are not covered by a valid

protest, the Court has no jurisdiction over those repairs.

A valid protest must set forth distinctly and specifically

each decision as to which a protest is made, and the nature of

and reasons for each objection.  <u>See</u> 19 U.S.C. § 1514(c)(1)

(2000); 19 C.F.R. § 174.13(a)(6) (2006).  The governing

principles concerning what constitutes a valid protest were

articulated by the Supreme Court in <u>Davies v. Arthur</u>:

> [T]he objections [in a protest] must be so distinct
> and specific, as, when fairly construed, to show that
> the objection taken at the trial was at the time in
> the mind of the importer, and that it was sufficient
> to notify the collector of its true nature and
> character, to the end that he might ascertain the
> precise facts, and have an opportunity to correct the
> mistake and cure the defect, if it was one which could
> be obviated.

96 U.S. 148, 151 (1878); <u>accord</u> <u>VWP of Am., Inc. v. United</u>

<u>States</u>, Slip Op. 06-144, 2006 Ct. Intl. Trade LEXIS 146, at *16

(CIT Sept. 26, 2006) ("The minimal requirement has long been

whether the importer has sufficiently conveyed to Customs an

impression of the injury it believes it suffered by Customs'

decision or action.").  In its evidence submitted for trial,

Volkswagen has included thousands of repairs that occurred after

the protest date.  These alleged defects could not have been "in

the mind of the importer" when the protest was made.

Additionally, Customs would never have had the opportunity to

"correct the mistake and cure the defect" if a valid protest

could include thousands of repairs added post-protest.  A

protest should sufficiently define the outside parameters of the

dispute so that they are brought to the attention of the Customs

Service.[3]  See Lykes Pasco, Inc. v United States, 22 CIT 614,

615, 14 F. Supp. 2d 748, 750 (1998).  In this case, the

parameters of the dispute would not be sufficiently defined by

the protest if Volkswagen was permitted to continually add

defects and repair evidence as they are discovered.

Following these principles, the Court held in Volkswagen I

that it did "not have jurisdiction over vehicles repaired after

the individual protest dates of each of the eighteen entries."

27 CIT at 1206, 277 F. Supp. 2d at 1369.  The Court reasoned as

follows:

> It is clear that [Volkswagen] had in mind at the time
> of protest defective automobiles that had already been
> repaired; however, [Volkswagen] could not have had in
> mind defects to automobiles that had not been repaired
> before the protests were filed.  Therefore, the Court
> does not have jurisdiction over the automobiles that
> were repaired after the date [Volkswagen] filed its
> protests with Customs.  See Mattel, 72 Cust. Ct. at
> 260, 377 F. Supp. at 959 ("a protest . . . must show
> fairly that the objection afterwards made at the trial
> was in the mind of the party at the time the protest
> was made").

Id. (footnote omitted).  To support its theory of jurisdiction,

Volkswagen focuses on the Court's statement in Volkswagen I that

"the Court does not have jurisdiction over the automobiles that

---

[3] This is not to say that all omissions, including minor and
inadvertent ones, could divest the Court of jurisdiction.  As
long as the original protest gave sufficient notice to Customs
of the actual claim, then jurisdiction will lie.  See VWP, Slip
Op. 06-144, 2006 Ct. Intl. Trade LEXIS 146, at *16-17.  (stating
that an inadvertent error in entry number contained in original
protest is not a jurisdictional bar if Customs was apprised of
the proper entry number).

were repaired after the date [Volkswagen] filed its protests . .

. .″   Id. (emphasis added).   Volkswagen puts great emphasis on

the fact that the Court used the word "automobiles" instead of

"repairs" when making this statement.   Additionally, the Federal

Circuit in Saab III "affirm[ed] the decision of the CIT

dismissing those claims relating to cars as to which no repair

existed at the time of protest, because Saab provided no

evidence that it was aware of those defects at that time."   434

F.3d at 1368 (emphasis added).   Once again, because the focus of

this language is on "cars," and not "repairs," Volkswagen

believes that once the Court has jurisdiction relating to a

vehicle, it has jurisdiction over repairs to that vehicle

discovered after the protest date.

     Volkswagen is incorrect because its theory of jurisdiction

is completely divorced from the requirements of a valid protest.

Regardless of how the jurisdictional holdings were phrased in

both Volkswagen I and Saab III, the principles set forth in

Davies v. Arthur and 19 U.S.C. § 1514(c)(1) must be followed.

Additionally, Volkswagen fails to note that in Saab I, the Court

clearly stated that it "lacks jurisdiction over claims for

vehicle repairs that occurred after the vehicles' respective

protest dates."   Saab Cars USA, Inc. v. United States, 27 CIT

979, 991, 276 F. Supp. 2d 1322, 1333 (2003) ("Saab I") (emphasis

added).   This language clarifies that the Court did not intend

to make a distinction between vehicles that had at least one repair before the protest date and vehicles that had no repairs. Instead, the Court found a relevant legal distinction between the defects Volkswagen knew about at the time of protest, and the defects that were unknown at that time.

In light of the above, the Court does not have jurisdiction over defects discovered (as evidenced by repairs done) after the date of protest.  The Court does have jurisdiction over Volkswagen's remaining claims pursuant to 28 U.S.C. § 1581(a).

## II.  STANDARD OF REVIEW

Customs' appraisement decisions are ordinarily entitled to a statutory presumption of correctness.  See 28 U.S.C. 2639(a)(1) (2000); Saab Cars USA, Inc. v. United States, 28 CIT __, __, 306 F. Supp. 2d 1279, 1283 (2004) ("Saab II"), aff'd, Saab III, 434 F.3d at 1359.  However, this presumption "carries no force as to questions of law."  Universal Elecs. Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997).  "[A] question as to the legal sufficiency of the evidence is a question of law."  Kent v. Principi, 389 F.3d 1380, 1383 (Fed. Cir. 2004).  In the present case, the Court is asked to determine, in light of Saab II and Saab III, whether Volkswagen has put forth sufficient evidence to sustain its burden of proving by a preponderance of the evidence that certain defects

existed in its merchandise at the time of importation.  Because
this is a question of law, the Court will review it de novo.

### III. DISCUSSION

#### A. Volkswagen's Evidence Submitted for Trial

Volkswagen's trial evidence consists of two exhibits.[4]
Exhibit A includes eighteen documents; one for each of the
eighteen subject entries.  See Pl.'s Ex. A (Confidential); Pl.'s
Br. 12.  Each document contains a chart with eighteen columns of
warranty repair details.  The eighteen information categories
Volkswagen has provided are: (1) vehicle model number, (2)
vehicle identification number ("VIN"), (3) repair order number,
(4) warranty claim type, (5) damage code, (6) deciphered damage
code, (7) mileage, (8) in-service date, (9) repair date, (10)
labor cost, (11) part cost, (12) other costs and credits, (13)
total repair cost paid by plaintiff, (14) adjustments, (15)
repair cost billable to factory, (16) qualifying warranty repair
cost, (17) qualifying warranty overhead cost, (18) total
qualifying warranty cost.  See Pl.'s Ex. A (Confidential); Pl.'s
Br. 12.  Most of this information was already before the Court
in Volkswagen I, with the exception of the vehicle model number,
the deciphered damage code, mileage, and the in-service date.

---

[4] For a discussion of evidence already before the Court in
Volkswagen I, see 27 CIT at 1206-08, 277 F. Supp. 2d at 1370-71.

Volkswagen has also provided the Court with Exhibit B, which is entitled "Damage Code Key."  See Pl.'s Ex. B (Confidential).  This exhibit categorizes the different warranty claim types listed in Exhibit A.  Volkswagen first lists what it considers to be "included claim types."  These are warranty claim categories that, according to Volkswagen, necessarily encompass repairs of defects existing at the time of importation.  For example, the list of "included claim types" includes emissions warranty repairs, recall repairs, paint claims and powertrain defect repairs.[5]  See Pl.'s Br. 15-16. Volkswagen claims that all repairs performed under these claim-types reflect defects that existed at the time of importation. If a repair reflects damage that did not exist at importation, it would be categorized under one of the several "excluded claim types" listed in Exhibit B.

Additionally, Exhibit B contains more detailed descriptions of the repairs listed in Exhibit A.  In order to connect the more detailed descriptions in Exhibit B to the repairs in Exhibit A, the Court is required to look at [ ] listed in Exhibit A.  That [ ] code is further deciphered in Exhibit B. This process is further discussed below.

---

[5] The complete list of "included claim types" is as follows: [ ]. See Pl.'s Ex. B (Confidential); Pl.'s Br. 16-17 (Confidential).

   B.  **An Allowance for Damage Existing at the Time of
       Importation Pursuant to 19 C.F.R. § 158.12**

    An importer may claim an allowance in value for merchandise

that is partially damaged at the time of importation.  See 19

C.F.R. § 158.12 (2006).[6]  In order to successfully claim a §

158.12 allowance, an importer must "establish by a preponderance

of the evidence which entries had defects at the time of

importation."[7]  Volkswagen I, 27 CIT at 1208; accord Fabil Mfg.

Co. v. United States, 237 F.3d 1335, 1339 (Fed. Cir. 2001).  In

Volkswagen I, this Court was satisfied that Volkswagen could, in

part, link defective merchandise to specific entries.  See 27

CIT at 1208, 277 F. Supp. 2d at 1371.  While Volkswagen was able

_____

[6] Section 158.12 states the following:

> Merchandise partially damaged at time of importation.
> (a) Allowance in value.  Merchandise which is subject
> to ad valorem or compound duties and found by the port
> director to be partially damaged at the time of
> importation shall be appraised in its condition as
> imported, with an allowance made in the value to the
> extent of the damage.

19 U.S.C. § 158.12.

[7] There are actually three requirements for an importer to
successfully claim an allowance under 19 C.F.R. § 158.12: (1)
the importer must show that it contracted for defect-free
merchandise, (2) the importer must link the defective
merchandise to specific entries, and (3) the importer must prove
the amount of the allowance value for each entry.  See
Volkswagen I, 27 CIT at 1207, 277 F. Supp. 2d at 1370; Samsung,
23 CIT at 4-6, 35 F. Supp. 2d at 945-46.  Volkswagen has already
successfully established that it contracted for "defect-free"
merchandise.  See Volkswagen I, 27 CIT at 1207, 277 F. Supp. 2d
at 1370.

to connect evidence of repairs to specific vehicles, and in turn

connect those vehicles to specific entries, it still needed to

develop the factual record to "independently confirm the

validity" of the repair records.  Id.  This independent

confirmation is necessary to "establish that the defects did

indeed exist at the time of importation."  Id.

## C.  Independent Confirmation of the Validity of the Repair Records

The Court discussed the "independent confirmation"

requirement in detail in Samsung, 23 CIT at 7-9, 35 F. Supp. 2d

at 947-48.  In that case, Samsung presented consumer warranties

as evidence that the subject merchandise was damaged at

importation.  See id. at 7, 35 F. Supp. 2d at 947.  Samsung's

warranty only covered repairs for defective merchandise, and not

merchandise damaged through misuse or mishandling.  See id. at

8, 35 F. Supp. 2d at 947.  In addition, an executive from

Samsung stated via affidavit that under the warranty, only

merchandise with latent defects was repaired or replaced.  See

id.  The Court found this evidence insufficient.  The Court

stated that "[a]lthough the Court has no reason to doubt the

veracity of Samsung's assertions, without additional,

independent evidence to corroborate the assertions, the Court

cannot verify that the merchandise was actually defective at the

time of importation, as opposed to damaged later through misuse

or mishandling." _Id._  The Court went on to describe how a

claimant could prevail on a § 158.12 claim:

> [T]o make a section 158.12 claim, a claimant should
> provide specific descriptions of the damage or defect
> alleged and, in some manner, relate that defective
> merchandise to a particular entry.  Such descriptions
> are necessary because both the Court and Customs must
> independently confirm the validity of an allowance
> claim.  And, descriptions or samples provide a
> reasonably objective basis upon which to assess such a
> claim.  For example, descriptions can be reviewed by
> the Court and by independent experts to confirm that
> the alleged damage existed at the time of importation,
> or that the damage is recognizable as a true
> manufacturing defect.

_Id._ at 8, 35 F. Supp. 2d at 947-48.[8]

In _Saab II_, the importer Saab attempted to meet this

evidentiary standard by providing the Court with short

descriptions of each vehicle part or component that was

allegedly defective.  28 CIT at __, 306 F. Supp. 2d at 1283.

The Court again found these insufficient because they were "not

detailed enough for anyone to ascertain whether the alleged

defects existed at the time of importation."  _Id._ at __, 306 F.

Supp. 2d at 1285.  The Federal Circuit affirmed, and elaborated

---

[8] The Court in _Samsung_ applied a "clear and convincing"
evidentiary standard to § 158.12 claims, 23 CIT at 6, 35 F.
Supp. 2d at 946, which is obviously a stricter standard than is
currently applied in these cases.  _See_ _Fabil Mfg. Co._, 237 F.3d
at 1339 (holding that the elements of § 158.12 must be proven by
a preponderance of the evidence).  However, the language in the
_Samsung_ cases regarding sufficiency of evidence for § 158.12
claims has been adopted in later cases applying the
preponderance of the evidence standard.  The requirement of
independent verification must be met in order to meet the
preponderance of the evidence standard.

on the requirement that the evidence needed to prove defects

existed at the time of importation be independently verifiable.[9]

See Saab III, 434 F.3d at 1374-75.  In light of these

precedents, Volkswagen's brief descriptions for each repair are

insufficient to permit an objective fact-finder to conclude by a

preponderance of the evidence that the claimed defects existed

at the time of importation.

    First, Volkswagen argues that repairs covered by certain

warranties, classified by "claim-types," are evidence of defects

---

[9] The Saab III court stated the following:

> We conclude that although some repairs authorized
> under the various warranties may relate to damage that
> existed at the time of importation, they do not
> necessarily so relate.  Saab's rigorous system for
> tracking and auditing warranty repair claims does not
> alter this result.  That system, which involves
> specialized databases that allow Saab to track all
> vehicle repairs by VIN and uses three levels of audits
> to ensure that dealers are making only appropriate
> warranty claims, certainly increases one's confidence
> that Saab's warranty claims  in the aggregate  are
> generally reliable.  Operating as it does, however, by
> auditing a limited number of claims from a limited
> number of dealers, it provides somewhat less assurance
> that any particular warranty claim is valid.  We
> acknowledge, of course, the probative value of the
> kind of statistical assurance that the auditing system
> provides, but conclude that our cases' emphasis on the
> need for specificity in allowance claims requires more
> than this kind of probabilistic evidence.

Saab III, 434 F.3d at 1374-75.

existing at the time of importation.[10]   It has therefore listed

all repairs made pursuant to certain "included claim-types" in

Exhibit A.   Even if these warranties make it clear that

Volkswagen would be reimbursed by the manufacturer only for

actual manufacturing or design defects in the imported

automobiles, still "it is not clear that all warranty repairs

necessarily indicate damage that existed at the time of

importation as required for an allowance under § 158.12."   Id.

at 1374; accord Samsung, 23 CIT at 8, 35 F. Supp. 2d at 947

(holding that evidence of warranty that only covers repairs for

defective merchandise is insufficient to prove § 158.12 claim

without "additional, independent evidence to corroborate").   In

other words, evidence of warranty claims alone is not sufficient

without corroboration, even if the warranty only covers repairs

for design and manufacturing defects.[11]

─────────────────

[10] Volkswagen also argues that every repair that was made
pursuant to a recall is, by definition, a repair of a design
defect that constitutes damage that existed at the time of
importation pursuant to § 158.12.   See Pl.'s Br. 30.   However,
recall repairs are not "by definition" repairs of damage that
existed at importation, because when the vehicle was ordered and
imported, it may have been manufactured exactly to the
construction specifications requested by Volkswagen.   If this is
the case, the vehicle was not damaged at the time of
importation.   Thus, the Court cannot conclude simply from the
evidence before it that repairs done pursuant to a recall
constitute evidence of damage that existed at the time of
importation.

[11] Volkswagen argues that when evidence of a warranty is
presented, it should be assumed that any repair of that vehicle

Second, Volkswagen discusses the descriptions it has provided of each repair.  The short descriptions in Exhibit A provide slightly more detail than Saab's brief descriptions of repaired parts; however, as Volkswagen recognizes, they are still insufficient to make a § 158.12 claim.  See Pl.'s Br. 20. For example, VIN [ ][12] corresponds to the following description: "steering lock/cylinder; stiff (sticks, jams); replaced."  This short statement does not give the Court or Customs enough objective, independent and recognizable information to determine wither the alleged defect existed at the time of importation. Volkswagen goes on to explain that the Court can further decipher the vehicle's damage code by looking at Exhibit B, the Damage Code Key, to find more information about the nature of the repair.  According to Volkswagen, the Damage Code Key contains descriptions of "each defect in each part with detail sufficient to prove that it existed at importation."  Id. 14. For VIN [ ], the relevant portion of the damage code is [ ]. When these [ ] are cross-referenced with the Damage Code Key, the Court finds the following statement:  "Binding – All moving

---

within the warranty time period represents a defect that existed at the time of importation in the absence of intervening events. See Pl.'s Br. 22.  This incorrectly shifts the burden to Customs to prove the existence of intervening events.  The burden is undoubtedly on Volkswagen to prove the elements of its claim.

[12] This VIN No. is found in the file in Exhibit A (Confidential) for Entry No. 110-1030393-9.

parts which stick, jam, are too tight, seized, locked, difficult

to shift, rubbing, insufficient play, do not engage or disengage

properly.  Examples: Seized or scored pistons, door hinges."

Ex. B 46.  This language explains that this particular part was

damaged at the time it was repaired, but it certainly does

nothing to demonstrate, with independent and verifiable

evidence, that a defect existed at the time of importation.

   Even the descriptions that use the word "defect," or

similar words, are not adequate.  VIN [  ][13] is described as "oe

power antenna; electrical defects; replaced."  In the Damage

Code Key, this repair is further described as "Electrical

malfunction – Malfunctions in the electrical or electronic

system (where mechanical defects, corrosion or noise cannot be

determined), such as an open or shorted electrical circuit or no

current flow . . . Examples: Alternator not charging, incorrect

indication, flasher inoperative[.]"  This description explains

that there was an electrical malfunction, but it does nothing to

verify that the malfunction was caused by a defect that existed

at importation.  Volkswagen is asking the Court and Customs to

assume that any repair listed in Exhibit A must be the result of

a latent defect, but the evidence does not compel this

conclusion.  Volkswagen does label the repair as a "defect," but

---

[13] This VIN No. is found in the file in Exhibit A (Confidential)
for Entry No. 110-1030393-9.

this description is merely conclusory.  It does not allow an

independent fact-finder to conclude that this repair was

necessary to remedy a defect that more likely than not <u>existed</u>

<u>at the time of importation</u>.

### D.   The Distinction between Port Repairs and Warranty Repairs

In <u>Saab II</u>, the Court made a distinction between port

repairs and warranty repairs.  A "port repair" was performed

"almost immediately after importation," so the Court was less

concerned "that the repairs might have been made to remedy

damage resulting from intervening circumstances."  <u>Saab II</u>, 28

CIT at __, 306 F. Supp. 2d at 1287.  Regarding port repairs,

Saab met its burden of proof with its short, simple descriptions

of the repaired part.  On the other hand, a "warranty repair" is

performed at some time after importation.  When a repair is not

performed at the time of importation, the claimant must provide

more specific evidence as described above.  <u>See Saab III</u>, 434

F.3d at 1374 (holding that in the absence of evidence of

temporal proximity, claimant must provide more than warranty

agreements and more specific descriptions).

In the present case, Volkswagen contends that all repairs

made before the "in-service date" should be considered "port

repairs."  The Court will not adopt this sweeping

generalization.  The Court will not assume that any vehicle

repaired before its "in-service date" was unlikely to be damaged

due to intervening circumstances.  If Volkswagen wished to

alleviate the Court's concerns about intervening misuse or

mishandling, Volkswagen should have (1) clearly identified the

vehicle repairs that it likened to the "port repairs" in Saab

II, and (2) demonstrated that the repairs were completed

"immediately" after importation.  It did not do this.  All the

repairs are lumped together in Exhibit A, and the import dates

are not listed at all.[14]

## IV. CONCLUSION

Volkswagen used a categorical approach to attempt to prove

that over 300,000 defects existed at the time of importation of

certain entries.  According to Volkswagen, it has provided

Customs and the Court with a straightforward compilation of

Volkswagen's defect claims.  For any particular repair, if more

description is needed, the Court and Customs need only turn to

the Damage Code Key in Exhibit B (Confidential).  However, this

shortcut method is not sufficient to meet the burden set forth

in Saab III.  As discussed above, it requires the Court and

Customs to make too many unfounded assumptions about whether any

damage actually existed at the time of importation.  Section

---

[14] In its Reply Brief, Volkswagen attached a list of the import
dates for each entry.  This last-minute addition does not help
Volkswagen to sufficiently identify, in a manner that is
readable by the Court, which repairs that it considered "port
repairs" because they were completed immediately after
importation.  Therefore, Volkswagen has failed to meet its
burden of proof.

158.12 does permit an allowance for any defect that existed at
the time of importation, even when the damage is discovered
later.  See Saab III, 434 F.3d at 1371.  However, claimants must
keep in mind that "[o]nce Customs has liquidated merchandise, it
can be damaged through a number of causes, including misuse or
mishandling.  This makes it difficult, or in some cases
impossible, to identify the root cause of the damage or defect."
Samsung, 23 CIT at 8, 35 F. Supp. 2d at 947.  Volkswagen has
failed to overcome this difficult task with the evidence it has
submitted for trial in this case.[15]

     For the foregoing reasons, judgment will be entered in
favor of the defendant.

                              /s/ Richard W. Goldberg
                              **Richard W. Goldberg**
                              **Senior Judge**

**Date:      March 28, 2007**
           **New York, New York**

---

[15] Because Volkswagen has failed to prove that the damage at
issue existed at the time of importation, the Court need not
address the question of proving the value of that damage.

**UNITED STATES COURT OF INTERNATIONAL TRADE**

VOLKSWAGEN OF AMERICA, INC.,

               Plaintiff,

       v.

UNITED STATES,

              Defendant.

Before:  Richard W. Goldberg,
          Senior Judge

Court No. 96-01-00132

<u>**JUDGMENT**</u>

Upon consideration of Plaintiff Volkswagen of America, Inc.'s Brief Demonstrating that its Additional Evidence Submitted For Trial Herewith Is Sufficient to Prove An Allowance for Defects, Defendant United States' Memorandum in Opposition to Plaintiff's Brief, Plaintiff's Reply Brief, and all accompanying papers, and upon due deliberation, it is hereby:

**ORDERED, ADJUDGED AND DECREED** that the Court lacks subject matter jurisdiction over repairs performed after the date of Volkswagen's protests; and it is further

**ORDERED, ADJUDGED AND DECREED** that, as to the remaining repairs, judgment is entered for Defendant.

**IT IS SO ORDERED.**

/s/ Richard W. Goldberg
**Richard W. Goldberg**
**Senior Judge**

Date:     **March 28, 2007**
            **New York, New York**

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____

Deputy Clerk